1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ERIK L. BRANCH,

                            Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                       Defendant.

3:14-cv-00423-HDM-VPC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

This Report and Recommendation is made to the Honorable Howard D. McKibben, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is plaintiff's motion for remand (#12) and defendant's cross-motion to affirm and opposition (#s 15/16).  For the reasons set forth herein, the court recommends that defendants' cross-motion be denied, and that plaintiff's motion for remand for a benefits award be granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On November 7, 2011, Erik Branch ("plaintiff") filed a claim for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act.  (Administrative Record ("AR") 27.)  He alleged that his disability commenced on October 12, 2011.  (*Id*.)  The Social Security Administration denied his application in the first instance on April 3, 2012, and also upon reconsideration, on June 21, 2012. (*Id*.)  On August 1, 2013, plaintiff and his attorney appeared at a hearing before Administrative Law Judge ("ALJ") Gordan Momcilovic.  (*Id*. at 69-92.)  The ALJ issued a written decision on August 28, 2013, finding that plaintiff had "not been disabled" at any time between October 12, 2011 and the decision date.  (*Id*. at 27-36.)  Plaintiff appealed, and the Appeals Council denied review on June 17, 2014.  (*Id*. at 5-10.)  Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

On August 14, 2014, plaintiff filed a complaint for judicial review (#1).  In his motion for remand or reversal, plaintiff argues that the ALJ erred by improperly weighting the medical evidence, by improperly evaluating his credibility, and by relying on flawed testimony from the Vocational Expert ("VE").  (#12 at 11-21.)  Defendant opposed and submitted a cross-motion to affirm (#15), in which she disputes plaintiff's contentions of error.  After reviewing the papers and the ALJ's decision, this court ordered (#17) supplemental briefing on whether the ALJ erred with respect to his step-five conclusion that a "significant" number of positions exist in the national economy that plaintiff can perform.  This Report and Recommendation follows.

## II.     STANDARD OF REVIEW

The burden of proving disability in a claim for Social Security benefits rests upon the claimant.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423 (d)(1)(A).

This court has jurisdiction to review an ALJ's decision denying a claim for SSDI and SSI payments after the plaintiff has exhausted administrative remedies.  *See Brewes v. Comm'r of Soc. Sec. Admin*., 682 F.3d 1157, 1161-62 (9th Cir. 2012).  The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record.  *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citations omitted); see also 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").  The court applies the substantial evidence standard only to those particular issues and errors that the plaintiff identifies in his or her opening brief.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n.7 (9th Cir. 2009).

The substantial evidence standard is not onerous: it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Hill*, 698 F.3d at 1159 (citation and quotation omitted).  Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative.  *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation

1   omitted).  The ALJ's discussion must adequately explain the decision in light of such evidence:

2   "the ALJ, not the district court, is required to provide specific reasons for rejecting [the

3   evidence,]" *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically

4   discussing rejection of lay testimony) and the district court is "constrained to review the reasons

5   the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

6          In reviewing for substantial evidence, the court examines the entire record, considering

7   both evidence that supports and undermines the ALJ's decision.  *Robbins v. Soc. Sec. Admin*., 466

8   F.3d 880, 882 (9th Cir. 2006) (citation omitted) ("a reviewing court must consider the entire

9   record as a whole and may not affirm simply by isolating a 'specific quantum of supporting

10  evidence.'").  Where "the evidence is susceptible of more than one rational interpretation, the

11  decision of the ALJ must be upheld."  *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citation

12  omitted).  The ALJ alone is responsible for determining credibility and resolving ambiguities.

13  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

14                          **III.    DISCUSSION**

15  **A.      SSDI claims are evaluated under a five-step sequential process.**

16         The Commissioner follows a five-step sequential process for determining whether a

17  claimant is "disabled" for the purposes of SSDI and SSI.   20 C.F.R. §§ 404.1520(a)(4),

18  416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  Step one directs the ALJ

19  to determine whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. §§

20  404.1520(a)(4)(i), 416.920(a)(4)(i).  If so, the claimant is not disabled and the Commissioner

21  denies the claim.  *Id*. §§ 404.1520(b), 416.920(b).  The second step requires the ALJ to determine

22  whether the claimant's medically determinable impairment is "severe."  *Id.* §§ 404.1520(a)(4)(ii),

23  416.920(a)(4)(ii).  "Severe" impairments are those that significantly limit the claimant's physical

24  or mental ability to do basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  The Commissioner

25  denies the claim where the claimant lacks a severe impairment, or a severe combination thereof.

26  *Id*. §§ 404.1520(c), 416.920(c).    In step three, the claimant's impairment is compared to the

27  Agency's impairment list.  *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id*. § 404, Subpt.

28  P, App. 1 ("Listed Impairments").   Where the claimant's impairment is on the list, or is

1    equivalent to any impairment therein, and the claimant also meets the corresponding durational

2    requirement, the claimant is deemed disabled.  *Id.* §§ 404.1520(d), 416.920(d).

3         If the Commissioner does not find disability at step three, review of the claim proceeds to

4    the fourth step: whether the claimant can perform past relevant work.  *Id.* §§ 404.1520(a)(4)(iv),

5    416.920(a)(4)(iv).  The claimant is not disabled where he or she can engage in such work.  *Id.* §§

6    404.1520(e), 416.920(e).  The ALJ will find that the claimant can return to past relevant work if

7    he or she can perform the "actual functional demands and job duties of a particular past relevant

8    job" or the "functional demands and job duties of the [past] occupation as generally required by

9    employers throughout the national economy."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir.

10   2001) (internal quotation and citation omitted).

11        In making the step four determination, the ALJ considers the claimant's "residual

12   functional capacity" ("RFC") and the physical and mental demands of the work previously

13   performed.  20 C.F.R. §§ 404.1520(f), 416.920(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231

14   (9th Cir. 2010).  RFC is what the claimant can still do despite his or her limitations.  20 C.F.R. §§

15   404.1545, 416.945.  In determining the claimant's RFC, the ALJ must assess all of the evidence,

16   including medical reports and descriptions by the claimant and others of the claimant's relevant

17   limitations.  *Id.* §§ 404.1545(a), 416.945(a).

18        When evaluating a claimant's RFC, the ALJ is not required to believe every allegation the

19   claimant offers regarding his or her limitations.  *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007)

20   (citation omitted).  The ALJ must follow a two-part inquiry where the plaintiff alleges that the

21   disability results from excessive limitations or pain.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-

22   36 (9th Cir. 2007); *see also* Social Security Ruling 96-7p, 61 Fed. Reg. 34483 (July 2, 1996).

23   First, the ALJ determines whether the claimant has presented objective medical evidence of an

24   underlying impairment that reasonably can be expected to produce the alleged symptoms.

25   *Lingenfelter*, 504 F.3d at 1036.  Second, where no evidence suggests that the claimant is a

26   malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and

27   convincing" reasons for doing so.  *Id.*

28

4

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014), and it requires that the ALJ "specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony[,]" *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ must cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591-92 & n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (explaining that the ALJ must "point to specific facts in the record" to support a credibility finding). The focus, however, is ultimately upon the reviewing court: the credibility determination must be "sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001)); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, and lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor the ALJ can consider in his [or her] credibility analysis."). Medical opinions are also probative evidence when determining credibility of subjective complaints. 20 C.F.R. §§ 404.1529(c), 416.929(c); *Rollins*, 261 F.3d at 857.

If the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. §§ 404.1560(c), 416.960(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. At step five, the ALJ typically references "the grids," under which a finding of disability may be directed, and also considers the testimony of a vocational expert. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other occupations available in significant

1  numbers in either the region or several regions of the United States that the claimant can perform.

2  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1560(c), 416.960(c). If the ALJ establishes that the

3  claimant's RFC and transferable skills allow his or her performance of other occupations, he or

4  she is not disabled. 20 C.F.R. §§ 404.1566, 416.966. Conversely, if the ALJ concludes that the

5  claimant cannot adjust to any other work, he or she is entitled to benefits. *Id*. §§ 404.1520(g),

6  416.920(g).

7  **B.    The ALJ followed the five-step process and concluded that plaintiff was not disabled.**

8  In reviewing plaintiff's claim for benefits, the ALJ followed the five-step process

9  described above. (AR 28-29.) The ALJ determined that plaintiff had not engaged in substantial

10  gainful activity since October 12, 2011, the alleged onset date, and had "left hemiplegia,[1] status

11  post cerebrovascular accident (October 2011) with sequaelae of limitations of speech and

12  memory (i.e., cognitive disorder, not otherwise specified); obesity; lumbar disc disease; mood

13  disorder/depression; and generalized anxiety disorder," each a severe impairment under the

14  applicable regulations. (*Id*. at 29.)

15  The ALJ also concluded that, in light of the medical evidence and opinions in the record,

16  plaintiff's hypertension, hypothyroidism, Grave's Disease, skin rash, and history of cannabis and

17  cocaine use did not significantly limit his ability to perform basic work activities and, therefore,

18  were not severe impairments. (*Id*. at 31.) With respect to the severe impairments, the ALJ

19  concluded that they did not meet or medically equal the severity of a listed impairment in the

20  relevant subpart of the regulations; therefore, a finding of disability was not directed at step three.

21  (*Id*. at 31-32.)

22  The ALJ proceeded to step four and made several findings. First, the ALJ concluded that

23  plaintiff's RFC permitted "sedentary work" with the following additional restrictions: he can

24  climb only occasionally; must avoid "constant verbal interaction" and work environments with

25  high levels of noise; and can interact with supervisors, co-workers, and the general public only

26  occasionally. (*Id*. at 32-33.)

27  _____

28  [1] Hemiplegia is the paralysis of one side of the body. *Webster's Third New International Dictionary of the English Language Unabridged* 1054 (1986).

1   Second, the ALJ held that plaintiff's statements regarding the intensity and limiting nature

2   of plaintiff's impairments were consistent with a reduced capacity for work, but were not credible

3   to the extent that plaintiff alleged.  (*Id*. at 34-35.)  The ALJ cited disproportionality between the

4   complaints and objective clinical findings and inconsistency of plaintiff's statements as bases for

5   rejecting plaintiff's credibility.  (*See id*.)  In making these findings, the ALJ reviewed and

6   discussed the medical evidence, and accorded varying primacy to several medical opinions.  (*See*

7   *id*.)  Finally, in light of his RFC determination and the testimony of the VE, the ALJ concluded

8   that plaintiff was unable to perform his relevant past work as a loan officer.  (*Id*. at 35.)

9   Therefore, the ALJ proceeded to step five.  Because plaintiff's additional restrictions

10  prevent him from working all or "substantially all" of the occupations available at the sedentary

11  level, the grids did not direct a finding of non-disability.  (*See id*.)  With the aid of VE testimony,

12  the ALJ identified three occupations that exist in significant numbers in the national economy that

13  plaintiff can perform: "winder," of which there are 850 positions in Texas and 8,500 nationwide;

14  "polisher/eyeglasses," of which there are 200 jobs in Texas and 2,200 nationally; and "stem

15  mounter," of which there are 300 positions in Texas and 3,700 nationwide.  (*Id*. at 36.)

16  Consequently, the ALJ held that plaintiff was not disabled within the meaning of the Social

17  Security Act and denied his claim for benefits.  (*Id*.)

18  **C.    The ALJ erred in his step-five finding that other jobs exist in significant numbers in**
    **the national economy that plaintiff can perform, and remand for an award of benefits is**

19  **warranted.**

20  After an initial review of the parties' papers and the record, the court ordered that the

21  parties provide supplemental briefing on whether the jobs identified by the ALJ at step five exist

22  in "significant" number under applicable authority.  Defendant timely complied and argues that

23  the totals are significant.  In support, she cites Ninth Circuit authority and also cases from other

24  circuits, many of which date to the 1980s and concern economies of small, rural states like Iowa

25  and Oklahoma.  (*See* #18 at 3.)  Contrarily, plaintiff contends, largely on the basis of his parsing

26  of figures discussed in *Beltran v. Astrue*, that the number of jobs identified by the ALJ represent

27  an insignificant number when considered against the vast population of Texas.  (#20 at 2-3.)

28

As described above, the ALJ identified at step five three occupations that plaintiff can perform with his RFC and additional limitations, with statewide totals of 200, 300, and 850, and nationwide totals of 2,200, 3,700, and 8,500.  (AR 36.)  Upon identifying these positions, the ALJ concluded that plaintiff was not disabled at step five; therefore, he denied the claim for benefits.  (*Id*.)  Although the VE identified an additional occupation, "suture winder," she failed to provide national or local job totals.  (*See* AR 88.)  The ALJ's reasoning did not rely on this suggestion, however, so only the above three positions merit analysis.

The burden of establishing that other work exists in "significant numbers" lies with defendant.  *Tackett*, 180 F.3d at 1099.  The ALJ carries this burden by identifying jobs in significant number within the claimant's region or nationwide.  42 U.S.C. § 423(d)(2)(A).  In the Ninth Circuit, there is no "bright-line rule for what constitutes a 'significant number' of jobs." *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).  Nationwide figures, existing as they do across "several regions" of the country, necessarily require a greater total to constitute a "significant" number.  *See id*. at 389-90.  Similarly, the size of the region—whether a particular metropolitan area or an entire state—must factor into the analysis of whether a regional total is sufficient.  *Compare id. with Gutierrez v. Comm'r of Soc. Sec*., 740 F.3d 519, 528 (9th Cir. 2014).  That is, significance depends on whether the identified region is a particular metropolitan area, the entire states of Nevada or Oregon, or the whole of Texas or California.  Consistent with the lack of a bright-line rule, *Beltran*, 700 F.3d at 389, the bar is a moving one.

In *Barker v. Secretary of Health & Human Services*, the Ninth Circuit held that 1,266 jobs in the Los Angeles/Orange County areas constituted a significant number of regional positions. 882 F.2d 1474, 1479 (9th Cir. 1989).  In so concluding, the court considered decisions by other circuits that held totals as low as 500 regional jobs significant, although each of those regions was, apparently, a discrete metropolitan area rather than an entire state.  *See id*. at 1478-79 (citing, *e.g.*, *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988) (discussing the nine-county area around Dayton, Ohio)).  The *Thomas v. Barnhart* court held as significant 1,300 jobs in the state of Oregon and 622,000 nationwide.  278 F.3d 947, 960 (9th Cir. 2002).  Likewise, in *Moncada v. Chater*, the Ninth Circuit found significant 2,300 jobs regionally, in San Diego County, and 64,000

1    nationally.  60 F.3d 521, 524 (9th Cir. 1995).  Most recently, in *Gutierrez*, the Ninth Circuit

2    deemed 2,500 jobs in California and 25,000 nationwide a "significant" number.  740 F.3d at 529.

3          In counterpoint to these cases, the Ninth Circuit recently found error in an ALJ's finding

4    that 135 regional jobs and 1,680 national jobs constituted a significant number.  *Beltran*, 700 F.3d

5    at 389.  District court decisions within the Ninth Circuit align with these guideposts.  In *Allino v.*

6    *Colvin*, the Northern District of California deemed 350 jobs within the state of California and

7    3,200 nationwide as insignificant.  No. 14-CV-02173-WHO, 2015 WL 1265049, at *3-5 (N.D.

8    Cal. Mar. 19, 2015).  The Central District of California recently found that 140 regional jobs and

9    5,500 national jobs failed to carry the ALJ's step five burden.  *Vargas v. Colvin*, No. CV 13-

10   2116-E, 2013 WL 6254784, at *2-4 (C.D. Cal. Dec. 4, 2013).

11         In light of these cases, this court concludes that each of the six figures that the ALJ

12   identified does not satisfy the statutory requirement for a significant number of jobs.  Beginning

13   with the national figures—8,500, 2,220, and 3,700 positions—none is remotely close to the

14   "significant" standard.  In the Ninth's Circuit own words, sums of 25,000 present a "close call"

15   under the national standard.  *Gutierrez*, 740 F.3d at 529.  Thus, even the 8,500 figure fails to

16   constitute a sum of significance.  Conservatively assuming that there are only fifty regions across

17   the country, only 170 positions would fall within any particular region.  In light of the foregoing

18   authority, it is clear that 8,500 nationwide jobs does not represent significant availability.

19         No differently, the statewide sums are inadequate.  As an initial matter, the ALJ may cite

20   statewide totals when making a finding of significant jobs in the "local" economy.  *Gutierrez*, 740

21   F.3d at 526-27.  But as the Ninth Circuit's discussion in *Gutierrez* implies, whether a statewide

22   figure is significant depends, at least in part, on the size of the identified region.  *See id.* at 527-

23   28.  This conclusion is consistent with the caution expressed by the *Gutierrez* court about the use

24   of statewide totals.  *See id.* at 529.  Moreover, a contextual view is necessary in light of

25   defendant's own regulations, which promise that a claimant will not be denied benefits based

26   upon the existence of "[i]solated jobs that exist only in very limited numbers in relatively few

27   locations . . . ." 20 C.F.R. § 404.1566(b).

28

As of 2014, the estimated population of Texas was nearly twenty-seven million.  U.S. Census Bureau, *Community Facts*, http://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml (last visited June 24, 2015).  Whether the ALJ's cited figures—200, 300, and 850 jobs—are significant must be viewed within this context.  First, the court concludes that the 200 and 300 figures do not carry the ALJ's step-five burden.  Defendant's reliance on small sums from the states of Oklahoma and Iowa are entirely unavailing.  Instead, Ninth Circuit authority indicates that totals of a few hundred jobs in a *large* state fail to constitute a significant number.  *See, e.g.*, *Beltran*, 700 F.3d at 389; *Allino*, 2015 WL 1265049, at *3-5; *Vargas*, 2013 WL 6254784, at *2-4.

Second, the 850 figure, although a closer call, similarly fails to constitute a significant number of jobs in Texas.  Because it is infrequent that this court considers claims that arise in Texas, precedent from Texas district courts sheds light on the issue.  As succinctly stated in *Mericle v. Secretary of HHS*, 892 F. Supp. 843, 847 (E.D. Tex. 1995), "eight hundred and seventy jobs in the entire State of Texas, now the second most populous state in the country, is not a 'significant number.'"  *See also Walker v. Shalala,* No. H–93–2507, 1994 WL 171209, at *2 (S.D. Tex. Jan. 6, 1994) (deeming 1,800 jobs across all of Texas not significant under the applicable requirements); *compare with Doddy v. Comm'r of Soc. Sec. Admin*, No. 2:12-cv-384, 2014 WL 1268567, at *7-8 (E.D. Tex. Mar. 27, 2014) (finding significant 3,400 statewide jobs in Texas) *and Caronia v. Colvin*, No. 12-cv-595-Y, 2013 WL 5192904, at *7 (N.D. Tex. Sept. 13, 2013) (holding significant between 2,000 and 3,000 jobs across all of Texas).  In light of Ninth Circuit authority, the court reaches the same conclusion as did the *Mericle* court.

Accordingly, even assuming *arguendo* that the ALJ's decision is otherwise free of error, the ALJ failed to support his decision at step-five with substantial evidence that plaintiff can perform work that exists in a significant number in the national or local economy.  Remand for an award of benefits is proper.  As the Ninth Circuit has explained,

> Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to "tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand."  Requiring remand for further proceedings any time the vocational expert did not answer a hypothetical question addressing the precise limitations established by improperly discredited testimony

10

1   would contribute to waste and delay and would provide no incentive to the ALJ to
2   fulfill her obligation to develop the record.

3   *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted); *see also Allino*, 2015

4   WL 1265049, at *6 (ordering remand for award of benefits where ALJ's step-five decision that

5   jobs exist lacked support of substantial evidence).   As with *Benecke* and *Allino*, the error here

6   rests with the VE's step-five identification of jobs.   Were there other jobs available in significant

7   number that plaintiff could have performed, the VE could—and should—have provided them at

8   the hearing.   Because remanding for further proceedings would reward the ALJ's failure to

9   develop the record on this point, the court recommends that plaintiff's motion for remand for an

10  award of benefits (#12) be granted.

11  ## IV.   CONCLUSION

12  Because the ALJ's step-five finding of non-disability does not rest on substantial

13  evidence, the court recommends that plaintiff's motion for remand (#12) be granted and

14  defendant's cross motion (#15) be denied.   The case should be remanded to the Commissioner

15  only for an award of benefits.   Further, because the court rests its decision only on the issue

16  discussed above, it is not necessary to reach plaintiff's remaining assignments of error.   The

17  parties are advised:

18  1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file

19  specific written objections to this Report and Recommendation within fourteen days of receipt.

20  These objections should be entitled "Objections to Magistrate Judge's Report and

21  Recommendation" and should be accompanied by points and authorities for consideration by the

22  District Court.

23  2.   This Report and Recommendation is not an appealable order and any notice of

24  appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

25  judgment.

26
27
28

1

## V.     RECOMMENDATION

2       **IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand for an

3  award of benefits (#12) be **GRANTED** and defendant's cross-motion to affirm (#15) be

4  **DENIED**;

5       **IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close

6  this case.

7  **DATED**: July 1, 2015.

8  _____

9  **UNITED STATES MAGISTRATE JUDGE**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28